UNITED STATES DISTRCT COURT
EASTERN DISTRCT OF MISSOURI
EASTERN DIVISION

SUPPRESSED

FILED
SEP - 7 2026
U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>AYESHBHAI KHATERWALA,<br>DMAURIEA ROGERS,<br>and<br>ELIE LONGUELI,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 4:26CR478 MAL/SPM |

# INDICTMENT

## COUNT 1

### Conspiracy to Commit Wire Fraud (18 U.S.C. § 1349)

### The Conspiracy

1. Beginning no later than in or around March 2025, and continuing through at least in or around December 2025, in the Eastern District of Missouri and elsewhere, the defendants,

**AYESHBHAI KHATERWALA,**
**DMAURIEA ROGERS,**
and
**ELIE LONGUELI,**

knowingly, voluntarily and intentionally joined an agreement to commit the following offense against the United States:

(a) Having devised and intended to devise a scheme and artifice to defraud and obtain money and property by means of materially false and fraudulent pretenses and representations and for the purpose of executing such scheme, and attempting to do

so, did knowingly cause and attempt to cause to be transmitted by means of wire communication in interstate commerce, writings, signs, and signals in the form of interstate electronic communications, in violation of Title 18, United States Code, Sections 1343.

All in violation of Title 18, United States Code, Section 1349.

**Object of the Conspiracy**

2. The primary purpose of the scheme and artifice to defraud and obtain money by means of materially false and fraudulent pretenses, representations, and promises and the conspiracy to commit wire fraud was for the conspirators, including the defendants, to defraud elderly victims throughout the United States, including in the Eastern District of Missouri.

**Manner and Means**

3. The scheme and artifice to defraud and obtain money and property by means of materially false and fraudulent pretenses, representations, and promises and the conspiracy to commit wire fraud were carried out by the conspirators in the following manner:

4. Conspirators operating from a call center outside the United States contacted elderly victims through telephone calls and electronic messages and made false representations in order to induce victims to liquidate their savings and retirements funds to purchase gold bars and gold coins, which the victims then gave to couriers working on behalf of the conspiracy. Conspirators sometimes instructed victims to withdraw currency from their accounts and give the currency to couriers. Conspirators often convinced victims that the couriers were representatives of the United States government who were intending to safeguard the victims' money.

5. Conspirators told victims that their financial accounts had been compromised, and

that the victims needed to transfer funds to conspirators in order to maintain account security, transfers that sometimes took the form of liquidating accounts in order to purchase gold. Conspirators then directed couriers working on behalf of the conspiracy to meet with victims in person in order to retrieve the gold or currency. Conspirators instructed couriers to schedule travel plans, which often included booking flights to the towns where victims were located.

6. Conspirators provided couriers with detailed information regarding the victims, including names and residential addresses. Conspirators gave both the victims and the couriers a password to exchange during the gold and currency pickups, steps which were intended to provide the victims with a false sense of security regarding the transaction.

7. Once the courier retrieved gold or currency from a victim, the courier delivered the stolen currency or gold following the direction of the call center.

8. Once couriers successfully handed off the stolen gold or currency, they were paid a percentage of the total amount of money they had handled, sometimes through an electronic payment platform, such as Zelle.

9. Defendants Ayeshbhai Khaterwala ("Khaterwala"), Dmauriea Rogers ("Rogers"), and Elie Longueli ("Longueli"), worked as couriers on behalf of the conspiracy and travelled to victims' residences in order to retrieve gold or currency from the victims. Two of the victims of the conspiracy—Victim CT and Victim BK—were located in the Eastern District of Missouri.

10. Monarch Sachdev ("Sachdev") both worked as a courier himself and managed the gold or currency pickups of other couriers, including those of his co-conspirator Elon Harper ("Harper"), among others. Sachdev recruited Khaterwala as a courier. In his capacity as a manager in the conspiracy, Sachdev maintained records of payments to couriers and provided

instructions to couriers on the location of pickups, descriptions of victims, as well as passwords to use during the pickups. Sachdev also provided instructions to couriers regarding their transfers of the stolen gold bars and currency to other conspirators, including location and contact information.

11. As he gained seniority in the conspiracy, Harper, in turn, recruited couriers who worked for him and whose actions he directed, including Rogers and Longueli, among others.

12. Conspirators, including Khaterwala, Rogers and Longueli, communicated about the scheme with each other through various means, including electronic messages exchanged via WhatsApp sent using interstate wire transmissions.

13. In his capacity as a courier working on behalf of the conspiracy, Longueli picked up more than $1,300,000 in gold from victims located in states including Illinois and Iowa. In his communications with Harper and with Sachdev, Longueli referred to one of his victims as an "old man," discussed using passwords and false names when interacting with the victims, and said that he wanted to avoid doing pickups in public parking lots because there were cameras. In one exchange, Harper congratulated Longueli, who was paid a fee based on the amount of the money he stole from the victim, on making $1400 "tax free" in courier fees in one day.

14. In his capacity as a courier working on behalf of the conspiracy, Rogers picked up at least $900,000 in gold and cash from victims in Colorado, Arizona, Arkansas, Minnesota, and Oklahoma. For example, on or about November 14, 2025, Rogers picked up $258,000 in gold from Victim CL in Denver, CO. Rogers sent Sachdev and Harper a WhatsApp message saying, "This has been a thrill this better than my normal job ahahahahahahaha," and then sent a message saying, "74 year old lady outside looked bad asl too hahaha." Harper responded, "lol." Sachdev

then replied, "They got mucho dinero." In fact, Victim CL was a retired hairdresser, and the gold she had purchased at the direction of the conspirators exhausted her retirement savings. After the conspirators, including Rogers, had defrauded her, Victim CL had to return to work in order to avoid losing her home.

15. In his capacity as a courier working on behalf of the conspiracy, Khaterwala performed at least 7 pickups totaling more than $900,000 in cash, silver and gold from victims in states including Texas and Louisiana. In Khaterwala's communications with Sachdev, Sachdev instructed him to provide victims with a false "runner" name—David Miller.

All in violation of Title 18, United States Code, Section 1349.

## FORFEITURE ALLEGATION

The Grand Jury further finds by probable cause that:

1. Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, upon conviction of an offense in violation of Title 18, United States Code, Section 1343, or conspiracy to commit such offense, as set forth in Count 1, the Defendant(s) shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such violation.

2. Subject to forfeiture is a sum of money equal to the total value of property, real or personal, constituting or derived from any proceeds traceable to such violation.

3. If any of the property described above, as a result of any act or omission of the Defendant(s):

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

the United States of America will be entitled to the forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

A TRUE BILL.

__________________________
FOREPERSON

THOMAS C. ALBUS
United States Attorney

______________________________________
GWENDOLYN E. CARROLL #4657003NY
Assistant United States Attorney